1  LARRY W. LEE, Bar No. 228175
   lwlee@diversitylaw.com
2  KWANPORN "MAI" TULYATHAN, Bar No. 316704
   ktulyathan@diversitylaw.com
3  **DIVERSITY LAW GROUP, P.C.**
   515 S. Figueroa Street, Suite 1250
4  Los Angeles, CA 90071
   (213) 488-6555
5  (213) 488-6554 facsimile

6  WILLIAM L. MARDER, Bar No. 170131
   bill@polarislawgroup.com
7  **Polaris Law Group**
   501 San Benito Street, Suite 200
8  Hollister, CA 95023
   (831) 531-4214
9  (831) 634-0333 facsimile

10 Attorneys for Plaintiff James Sims,
   the Class, and Aggrieved Employees

11

12

13             **UNITED STATES DISTRICT COURT**

14             **CENTRAL DISTRICT OF CALIFORNIA**

15

16 JAMES SIMS, as an individual and on      Case No.  5:20-cv-01632-DMG-KK
   behalf of all others similarly situated,
17                                           **PLAINTIFF'S NOTICE OF MOTION
                  Plaintiff,                 AND MOTION FOR PRELIMINARY**
18                                           **APPROVAL OF CLASS ACTION**
          vs.                                **SETTLEMENT; AND MEMORANDUM**
19                                           **OF POINTS AND AUTHORITIES IN**
   QG PRINTING II LLC, a Connecticut         **SUPPORT THEREOF**
20 limited liability company; 74 QG
   PRINTING II LLC, business
21 organization, form unknown; and           Date:        December 15, 2023
   DOES 1 through 50, inclusive,             Time:        9:30 A.M.
22                                           Courtroom: 8C
                  Defendants.                Judge:       Hon. Dolly M. Gee
23

24

25

26

27

28

1

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 15, 2023, at 9:30 A.M., or as soon thereafter as the matter can be heard in Courtroom 8C of the United States District Court, Central District of California, located at 350 West 1st Street, Los Angeles, California, 90012, before the Honorable Dolly M. Gee, Plaintiff James Sims ("Plaintiff") will and hereby does move this Court for an Order preliminarily approving the proposed class action settlement. Specifically, Plaintiff respectfully requests that the Court order as follows:

1.    Grant preliminary approval of the proposed class action settlement;

2.    Grant conditional certification of the proposed settlement class;

3.    Authorize the mailing of the proposed notice to the class of the settlement; and

4.    Schedule a "fairness hearing," *i.e.*, a hearing on the final approval of the settlement.

Plaintiff makes this motion on the grounds that the proposed settlement is fair and within the range of possible final approval. This Motion is based upon this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement, the attached Memorandum of Points and Authorities in Support, the accompanying Declarations of Larry W. Lee, Kwanporn "Mai" Tulyathan, William L. Marder, and James Sims, the accompanying Joint Stipulation of Class Action Settlement, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

DATED: November 9, 2023                DIVERSITY LAW GROUP, P.C.

By: _/s/ Kwanporn "Mai" Tulyathan_
                      Larry W. Lee
                      Kwanporn "Mai" Tulyathan
              Attorneys for Plaintiff and the Class

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 9

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................... 10

   A.   Summary of the Litigation ..................................................................... 10

   B.   Summary of Investigation and Discovery ........................................... 12

   C.   Summary of the Current Settlement ..................................................... 13

   D.   The Settlement is Fair, Reasonable, and Adequate ........................... 15

III.  DISCUSSION ....................................................................................................... 16

   A.   The Proposed Settlement Class Satisfies The Elements For Class
        Certification. ............................................................................................. 18

   1.   The Court Has Already Certified The Class and Therefore Should Certify the Class As
        Defined In The Settlement Agreement. ..................................................................... 18

   2.   Numerosity ................................................................................................. 19

   3.   Ascertainability .......................................................................................... 20

   4.   Typicality .................................................................................................... 20

   5.   Commonality ............................................................................................... 21

   6.   Adequacy ..................................................................................................... 22

   7.   Common Questions of Law and Fact Predominate ............................... 22

   8.   Superiority of Class Action ....................................................................... 23

   B.   Arm's Length Negotiations and Discovery Prior to Settlement Warrant
        Approval ..................................................................................................... 23

   1.   Experience of Class Counsel ..................................................................... 24

   2.   Investigation and Discovery Prior to Settlement ................................... 24

   3.   Risk of Continued Litigation ..................................................................... 28

   4.   The Complexity, Expense, and Likely Duration of Continued Litigation Against the
        Settling Defendant Favors Approval ......................................................................... 29

5.    *Non-Admission of Liability by Defendant* ........................................ 29

6.    *Settlement Was the Result of Negotiations Facilitated By a Neutral and With Approval of the Class Representative* ........................................ 29

C.    **Enhancement Payment to the Class Representative** ....................................30

D.    **The PAGA Settlement is Fair, Reasonable, and Adequate** ..........................31

E.    **Adequacy of Class Notice** ................................................................32

F.    **Administration of the Settlement** .......................................................33

G.    **The Scope of the Releases Are Appropriately Limited** ..............................34

H.    **Attorneys' Fees and Costs** ...............................................................36

IV.    **CONCLUSION** ...............................................................................36

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

*Alonzo v. Maximus, Inc.*, 275 F.R.D. 513 (C.D. Cal. 2011) ...............................22

5

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)......................................18

6

*Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1122 (9th Cir. Cal. 2014) .............31

7

*Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127 (9th Cir. 2021) ..............................26

8

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979)..................................28

9

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)................................32

10

*Clark v. QG Printing II, LLC, et al.*, CV 18-0899-AWI (EPGx) (E.D. Cal.) ..................19

11

*Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998)........................................30

12

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) ...........................21

13

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998).................................................36

14

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ..............................................28, 29

15

*Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990)..........................................23

16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................................20, 21, 23

17

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964).....................20

18

*In re Bluetooth Headset Prods. Liab. Litig. (In re Bluetooth)*, 654 F.3d 935 (9th Cir. 2011)......................................................................18

19

*In re Chicken Antitrust Litig.*, 560 F. Supp. 957 (N.D. Ga. 1980) ..................................23

20

*In re General Motors Corp.*, 55 F.3d 768 (3d Cir. 1995)......................................28

21

*In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251 (C.D. Cal. 1988) .............................................................20

22

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 4010049 (N.D. Cal. July 26, 2016)..........................18

23

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014)............................................21

24

25

26

27

28

*Karam v. Corinthian Colleges Inc.*, Case No. 10-cv-06523-RGK-PJW, 2017 WL
4070889 (C.D. Cal. July 7, 2017)..................................................................24

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978)............................22

*Magadia v. Wal-Mart*, 2018 WL 339139 (N.D. Cal. Jan. 9, 2018)................................22

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677 (7th Cir.
1987)..................................................................................................23

*McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290 (C.D. Cal. 2011).................................22

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)..............................33

*National Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)23,
24, 29

*Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d
615 (9th Cir. 1982) .........................................................................17, 29

*Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361 (C.D. Cal. 2009).................................22

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ....................................................21

*Philadelphia Hous. Auth. v. Am. Radiator & Standard. Sanitary Corp.*, 323 F. Supp. 364
(E.D. Pa. 1970) .......................................................................................17

*Priddy v. Edelman*, 883 F.2d 438 (6th Cir. 1989) ..................................................23

*Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157 (9th Cir. 2013).............................22

*Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157 (9th Cir. 2013).........................30

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010)................................................20

*Slaven v. BP Am., Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000).........................................20

*Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104 SC, 2008 WL 4156364 (N.D. Cal.
Sept. 5, 2008)..........................................................................................23

*Sommers v. Abraham Lincoln Federal Sav. & Loan Ass'n*, 79 F.R.D. 571 (E.D. Pa. 1978)
.........................................................................................................23

*Stafford v. Brink's, Inc.*, C.D. Cal. Case No. CV-14-01352-MWF (PLAx) ....................22

*Steinberg v. Carey*, 470 F. Supp. 471 (S.D.N.Y. 1979) ............................................23

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT**

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) ...........................17

*Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437 (9th Cir. 1989) ............16

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976 .........................................29

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995)......30

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).....................................................21

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) .....................23

*Young v. Katz*, 447 F.2d 431 (5th Cir. 1971) ..................................................................29

**State Cases**

*Arias v. Superior Court*, 46 Cal. 4th 969, 974 (2009) .....................................................31

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) ..........................................26

*Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480 (Aug. 11, 2016)...........................................36

*Naranjo v. Spectrum Security Services, Inc.*, __ Cal. Rptr. 3d __, 2023 WL 2261253 (Feb. 27, 2023).........................................................................................................................27

*Ramos v. QG Printing II LLC, et al.*, CV 18-4837 (Cal. Super. Ct.) ...............................19

**Statutes**

Business and Professions Code § 17200, *et seq*. ............................................................10

California Civil Code § 1542 ..........................................................................................30

Civil Code § 1542 ..........................................................................................................36

Labor Code § 203............................................................................................................27

Labor Code § 226............................................................................................................27

Labor Code § 226(a) ................................................................................................passim

Labor Code § 226(e) ...............................................................................................26, 27

Labor Code § 2698, *et seq*. .........................................................................................10

Labor Code § 2699(i)......................................................................................................31

Labor Code § 2699(l)(2) .................................................................................................31

Labor Code § 2802.................................................................................................10, 35

**Other Authorities**

5 James Wm. Moore et al., *Moore's Federal Practice* § 23.165 (3 ed. 2010)..................17

Alba Conte & Herbert B. Newberg, *4 Newberg on Class Actions* § 11.26 (4th ed. 2002)16

Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 11.41 (4th ed. 2002) ...........................................................................................................................29

Alba Conte & Herbert B. Newberg, *4 Newberg on Class Actions* § 11.47 (4th ed. 2002)24

Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1779 (3d ed. 2005)..........................................................................................23

*Manual for Complex Litigation, Fourth* § 21.632 (Fed. Jud. Ctr., 4th ed. 2004)........16, 28

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................19

Fed. R. Civ. P. 23(a).................................................................................................18

Fed. R. Civ. P. 23(a)(1)............................................................................................19

Fed. R. Civ. P. 23(a)(2)............................................................................................21

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................33

Fed. R. Civ. P. 23(f)................................................................................................12

Fed. R. Civ. P. 23(a)(3)............................................................................................20

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff James Sims ("Plaintiff" or "Named Plaintiff") seeks preliminary approval of the Joint Stipulation of Class Action Settlement ("Settlement Agreement" or "Stipulation")[1] that has been reached in the above-captioned matter with Defendant QG Printing II, LLC ("Defendant") (Defendant and Plaintiff are collectively referred to as the "Parties").

Specifically, the Parties reached a class-wide resolution of the claims alleged in this lawsuit.  The proposed Settlement Class[2] includes the following:

- All current and former non-exempt press production employees at the Merced and Riverside California plants who used Defendant's scheduling hotline or Inside Quad for purposes of checking their schedule during the period of April 6, 2016, through Preliminary Approval" ("Group 1"); and

- All other current and former non-exempt employees in California (who are not part of Group 1) and who were issued wages during the period of July 20, 2022, through Preliminary Approval" ("Group 2").

*See* Settlement Agreement § 1.2.  The terms of the settlement provide that Defendant shall pay a Gross Settlement Amount of One Million One Hundred Fifty Thousand Dollars ($1,150,000.00), which is inclusive of payments to Class Members, a service award to the Class Representative, attorneys' fees and costs, payment of PAGA penalties, and settlement administration costs.  Settlement Agreement § 1.13.  The Parties currently estimate and project that after deduction for settlement administration costs, attorneys' fees, litigation costs, PAGA penalties, and a service award to the Plaintiff, the Net Settlement Amount of approximately $593,416.67 will be distributed between an

---

[1] The Joint Stipulation of Class Action Settlement is attached as **Exhibit A** to the Declaration of Mai Tulyathan ("Tulyathan Decl.").

[2] Group 1 and Group 2 are collectively referred to herein as the "Class" or "Settlement Class."

estimated 975 Class Members.  Settlement Agreement §§ 1.13, 1.18, 1.21, 1.34, 5, 6, and 4.1.1; Tulyathan Decl. at ¶¶ 32, 34.  The Net Settlement Amount will be divided among participating Class Members on a pro rata basis, based upon the number of pay periods each Class Member performed work for Defendant in California.  Moreover, this is a **non-reversionary settlement**, such that the entire settlement amount will be distributed, and no funds will revert to Defendant in any instance.  Settlement Agreement §§ 1.13, 3.1.  Finally, no claim forms will be necessary for any Class Member to participate in the settlement.  Settlement Agreement § 3.1.  Thus, any Class Member who does not opt-out from this Settlement will automatically be issued their share of the settlement proceeds.

Accordingly, through this Motion, the Parties respectfully request preliminary approval of the class action settlement.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Summary of the Litigation

On June 1, 2020, Plaintiff filed the operative class and representative action complaint against Defendants QG Printing II, LLC and 74 QG Printing II LLC[3], in the Superior Court of California, County of Riverside.  Dkt. No. 1-2.  On August 14, 2020, Defendant removed the action to federal court.  Dkt. No. 1.

The operative Complaint alleges the following causes of action: (1) failure to pay wages; (2) violation of Labor Code § 2802; (3) violation of Labor Code § 226(a); (4) violation of Business and Professions Code § 17200, *et seq.*; and (5) violation of Labor Code § 2698, *et seq.*, the Private Attorneys General Act ("PAGA").  Plaintiff brings claims for (1) failure to pay minimum, regular, overtime, and reporting time wages based on an alleged "call-in" practice of having class members confirm their scheduled shifts off-the-clock prior to their shifts, (2) failure to reimburse business expenses to class members for use of personal cell and/or home phones to check their schedules,  (3)

---

[3] On February 19, 2021, the Court dismissed 74 QG Printing II LLC, without prejudice, from the Action pursuant to the Parties' stipulation to dismiss that entity from this Action.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

failure to provide accurate itemized wage statements to class members (derivative and standalone wage statement violations), and (4) unfair business practices in violation of the California Unfair Competition Law.  Specifically, Plaintiff alleges that during his off hours, he was required to use his personal telephone to call a designated telephone number and/or log in via an online website before his scheduled work shift to confirm whether he will in fact be working that particular shift.  Plaintiff alleges that he was not paid for the time "calling in" to check his schedule off-the-clock and that he was not reimbursed for the costs incurred in connection therewith.  Plaintiff alleges that he was not paid reporting time pay on occasions when he reported to work but was not permitted to work and/or worked less than half of the scheduled shift.  Plaintiff also alleges derivative wage statement violations based on the above violations.  In addition, Plaintiff asserts independent wage statement violations, alleging that the wage statements identified inaccurate hourly rates of pay for overtime and double time wages, as well as an incorrect legal name of the employer.

On August 21, 2020, Defendant filed a Motion to Dismiss Or, In the Alternative, Discretionary Stay Pursuant to First-To-File Rule, based on two prior filed actions alleging similar claims.  Dkt. No. 10.  On January 14, 2021, the Court issued its Order denying Defendant's Motion, in part, finding that the First-To-File-Rule did not prevent Plaintiff from proceeding with his off-the-clock, reporting time pay, and expense reimbursement claims.  Dkt. No. 19.  The Court ordered a stay on Plaintiff's independent Labor Code § 226(a) claim, and his related PAGA claim based on the same violation, pending resolution of that claim in the prior actions.  *Id*.

On September 7, 2021, the Parties participated in a mediation session with the Honorable Kevin Murphy (Ret.).  Despite good faith, arm's length negotiations, the Parties were unable to reach an agreement at the mediation and resumed litigation. Tulyathan Decl. at ¶ 8.

On December 17, 2021, Plaintiff filed his Motion for Class Certification, seeking certification of his off-the-clock, reporting time pay, and unpaid reimbursement claims.

Dkt. No. 35.  On March 4, 2022, the Court issued its Order granting Plaintiff's Motion in part and certified Plaintiff's call-in and reporting time pay claims.  In particular, the Court certified a class of "[a]ll current and former non-exempt press production employees of Defendant QG Printing II LLC who worked at Defendant's Riverside and/or Merced facility in the State of California at any time between April 6, 2016 through the present." Dkt. No. 47, p. 31.

Defendant moved for reconsideration of the Court's Order granting class certification on March 18, 2022.  Dkt. No. 50.  On March 22, 2023, the Court issued its Order Denying Defendant's Motion for Reconsideration of the Order Granting Plaintiff's Motion for Class Certification.  Dkt. No. 66.

On April 5, 2023, Defendant filed a Petition for Permission to Appeal Order Granting Class Certification under Fed. R. Civ. P. 23(f) in the Ninth Circuit.  9th Cir. Dkt. No. 1.  The Ninth Circuit issued its Order denying the Petition on June 1, 2023. 9th Cir. Dkt. No. 3.

On June 28, 2023, the Parties attempted a second mediation session with experienced neutral Michael J. Loeb, Esq.  Tulyathan Decl. at ¶ 12.  While the Parties did not reach a settlement on that date, the Parties engaged in negotiations post-mediation facilitated by the mediator.  After months of continued post-mediation negotiations facilitated by Mr. Loeb, on September 19, 2023, the Parties reached the basic terms of a settlement, signed a binding Memorandum of Understanding, and agreed to prepare this formal settlement agreement, subject to Court approval.  *Id.*

## B.   Summary of Investigation and Discovery

The Parties have engaged in extensive formal and informal discovery in this Action.  Tulyathan Decl. at ¶¶ 18-19.  As part of formal discovery, Plaintiff has taken numerous depositions, including various Defendant's FRCP 30(b)(6) witnesses on a myriad of topics, class members, and Defendant's expert witness.  Plaintiff's counsel has also defended Plaintiff's deposition.  Defendant has also produced class data, thousands of pages of call logs, and documents pertaining to the relevant policies and practices at

issue.  The Parties also engaged in expert discovery.  As part of informal discovery, Defendant provided information regarding the size and scope of the class for mediation. *Id.*

Class Counsel have engaged in intensive arm's-length negotiations with counsel for Defendant with a view toward achieving substantial benefits for the Class while avoiding the cost, delay, and uncertainty of further litigation, trial, and appellate review. *Id.* at ¶ 21.

### C.    Summary of the Current Settlement

The Settlement Agreement provides for a total settlement sum of One Million One Hundred Fifty Thousand Dollars ($1,150,000.00), inclusive of payments to Class Members, a service award to the Class Representative, attorneys' fees and costs, payment of PAGA penalties, and settlement administration costs.  Settlement Agreement § 1.13.

Pursuant to the terms of the Settlement Agreement, the Net Settlement Amount (after deduction of attorneys' fees in the amount of up to Three Hundred Eighty-Three Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($383,333.33), litigation costs of up to Fifty Thousand Dollars ($50,000.00), the Class Representative Enhancement Payment in the amount of up to Ten Thousand Dollars ($10,000.00), PAGA Penalties to the LWDA and PAGA Employees in the amount of One Hundred Thousand Dollars ($100,000.00), and costs of settlement administration in the amount of approximately Thirteen Thousand Two Hundred Fifty Dollars ($13,250.00) is approximately $593,416.67.  Settlement Agreement §§ 1.13, 4-8; Tulyathan Decl. ¶ 34.

As provided in the Settlement Agreement, individual settlement payments to Class Members shall be treated as follows: 1/3 as wages, 1/3 as interest, and 1/3 as penalties. The wage payments shall be reported on IRS Forms W-2, and the interest and penalties payments shall be reported on IRS Forms 1099.  Settlement Agreement § 10.1. Defendant will pay employer's share of payroll taxes separate from and in addition to the Gross Settlement Amount.  Settlement Agreement § 3.1.  Individual payments to the PAGA Employees from the PAGA Penalties shall be treated as one hundred percent

(100%) penalties and shall be reported on IRS Forms 1099.  Settlement Agreement § 10.1.

Significantly, this Settlement is non-reversionary and does not involve the use of claim forms.  Settlement Agreement § 3.1.  In other words, none of the unclaimed settlement funds will revert back to Defendant and Class Members need not do anything to receive their share.  Instead, the Class Members will automatically receive their share of the settlement funds so long as they do not opt-out from the Settlement.  Moreover, as the Settlement is non-reversionary, the Net Settlement Amount available to Class Members will proportionately increase as the result of any opt-outs.  *Id.*

Additionally, the remaining monies from uncashed checks shall be paid to the cy pres beneficiary of the Settlement, Legal Aid Association of California.  Settlement Agreement § 9.7.  Legal Aid Association of California is a nonprofit statewide membership organization consisting of hundreds of nonprofit legal services organizations that provide legal assistance to low-income Californians.  Tulyathan Decl. at ¶ 38.  The Parties and their respective counsel do not have any relationship with Legal Aid Association of California.  *Id.*; Declaration of Larry W. Lee ("Lee Decl.") at ¶ 9; Declaration of William L. Marder ("Marder Decl.") at ¶ 13.

The Class consists of two settlement groups:

- All current and former non-exempt press production employees at the Merced and Riverside California plants who used Defendant's scheduling hotline or Inside Quad for purposes of checking their schedule during the period of April 6, 2016, through Preliminary Approval" ("Group 1"); and
- All other current and former non-exempt employees in California (who are not part of Group 1) and who were issued wages during the period of July 20, 2022, through Preliminary Approval" ("Group 2").

*See* Settlement Agreement § 1.2.  As will be further explained below, Group 1 Class Members represents the class as certified by the Court at class certification, while Group 2 Class Members represents the settlement class for the independent Labor Code § 226(a)

claims alleged in this Action that was stayed based on two prior filed actions.  The identities of Class Members can be ascertained from Defendant's payroll records.  Based upon Defendant's records, the estimated number of unique Class Members is approximately 975.  Tulyathan Decl. at ¶ 32.

### D.    The Settlement is Fair, Reasonable, and Adequate

Based on their own respective independent investigations and evaluations, the Parties and their respective counsel are of the opinion that settlement for the consideration and on the terms set forth in their Settlement Agreement is fair, reasonable, and adequate and is in the best interests of the Class and the Defendant in light of all known facts and circumstances and the expenses and risks inherent in litigation.  Lee Decl. ¶ 3; Tulyathan Decl. ¶ 31; Marder Decl. ¶ 3.

Based on the approximately 975 Class Members, each Class Member will receive a raw average of approximately $608.63 from the Net Settlement Amount.  Tulyathan Decl. ¶ 36.  Each Class Member who does not opt out ("Participating Class Member") may receive a settlement amount that is more or less than this raw average, depending on each respective class member's number of pay periods worked for Defendant in California during the Class Period, and the number of opt-outs received.  *Id.*; Settlement Agreement § 4.1.  Each Participating Class Member will be paid a pro rata share calculated based on the number of pay periods each Class Member performed work for Defendant in California, as compared to the total number of pay periods all Class Members performed work for Defendant in California during the Class Period.  Settlement Agreement § 4.1.

Furthermore, PAGA Employees will receive a portion of the PAGA Penalties on a pro rata basis, based on the number of pay periods each PAGA Employee performed work for Defendant in California during the PAGA Period, as compared to the total number of pay periods all PAGA Employees performed work for Defendant in California during the PAGA Period.  Settlement Agreement § 7.

///

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT**

### III.  **DISCUSSION**

Any settlement of class litigation must be reviewed and approved by the Court. This is done in two steps: (1) an early (preliminary) review by the court, and (2) a final review and approval by the court after notice has been distributed to the class members for their comment or objections. The *Manual for Complex Litigation, Fourth* states:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties.... The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

*Manual for Complex Litigation, Fourth* § 21.632 (Fed. Jud. Ctr., 4th ed. 2004).

Thus, the preliminary approval by the trial court is simply a conditional finding that the settlement appears to be within the range of acceptable settlements. As Professor Newberg comments, "[t]he strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal may vary. The court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid subject only to any objections that may be raised at a final hearing." Alba Conte & Herbert B. Newberg, *4 Newberg on Class Actions* § 11.26 (4th ed. 2002). Accordingly, a court should grant preliminary approval of a class action settlement where it is within the "range of reasonableness." Here, the Parties have reached such an agreement and have submitted it to the Court in connection with this filing.

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in complex class actions such as this case. *Officers for*

*Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). One factor that courts consider in evaluating settlements is the settling defendant's financial condition. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) ("One factor predominates to make clear that the district court acted within its discretion. That factor is [the defendant's] financial condition.").

Preliminary approval does not require the Court to make a final determination that the settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after class members have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.165 (3 ed. 2010). In considering the settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute and need not engage in a trial on the merits. *Officers for Justice*, 688 F.2d at 625. Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement…may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard. Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

Here, the proposed settlement falls within the range of reasonableness and should be preliminarily approved.  The Parties were represented by experienced counsel, and the settlement was the result of mediation and negotiations facilitated by an experienced wage and hour class action mediator.  As discussed above and in the attached declarations, the Parties engaged in substantial investigation and analysis related to the claims and defenses alleged in this case.  Further, the proposed settlement was reached after the Parties utilized the assistance of experienced mediators and after substantial arm's length negotiations between the Parties.

As detailed herein, the proposed settlement satisfies the standard for preliminary approval as it is well within the range of possible approval and there are no grounds to doubt its fairness.  Counsel for Plaintiff and Defendant have extensive experience in employment law, particularly in wage and hour litigation, and reached a settlement only

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

after mediation and extensive arm's length negotiations. *See In re Bluetooth Headset Prods. Liab. Litig. (In re Bluetooth)*, 654 F.3d 935, 948 (9th Cir. 2011) (noting the presence of a neutral mediator is a factor weighing in favor of approval, although not dispositive).

### A. The Proposed Settlement Class Satisfies The Elements For Class Certification.

Certification of a settlement class is "a two-step process." *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 4010049, at *10 (N.D. Cal. July 26, 2016) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). First, the Court must find that the proposed settlement class satisfies Rule 23(a)'s four requirements. *Id.* (citing Fed. R. Civ. P. 23(a). Second, the Court must find that "a class action may be maintained under either Rule 23(b)(1), (2), or (3)." *Id.* (citing *Amchem Prods.*, 521 U.S. at 613). Here, the Class readily satisfies all Rule 23(a)(1)-(4) and (b)(3) certification requirements, and certification should be granted for settlement purposes. When "[c]onfronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there will be no trial." *Amchem Prods.*, 521 U.S. at 620.

### 1. The Court Has Already Certified The Class and Therefore Should Certify the Class As Defined In The Settlement Agreement.

As explained above, on March 4, 2022, the Court granted Plaintiff's Motion for Class Certification, in part, and certified Plaintiff's call-in and reporting time pay claims. As stated in the Court's Order, the Court certified a class of "[a]ll current and former non-exempt press production employees of Defendant QG Printing II LLC who worked at Defendant's Riverside and/or Merced facility in the State of California at any time between April 6, 2016 through the present." Dkt. No. 47, p. 31.

The Settlement Class as defined in the Settlement Agreement includes two groups. The main class, Group 1, represents the class definition above as certified by the Court,

with the sole difference being that the class as certified by the Court runs through the date of class certification, i.e., March 4, 2022, while the class period end date of Group 1 will run through the date of Preliminary Approval. Settlement Agreement § 1.2. Here, the same class members, class data, legal arguments, and investigation are implicated by the class that is already certified by the Court and Group 1, except that the latter will encompass class members through the date of Preliminary Approval. Thus, for purposes of this Motion, the Court need not re-engage in an analysis of whether this class can be certified for settlement purposes as this Court has already found that the elements of Rule 23 of the Federal Rules of Civil Procedure have been met, even under the rigorous, non-settlement, context. Thus, Plaintiff will not repeat any arguments in this Motion as to why this class should be certified.

Additionally, in addition to the certified claims, this Action also involves independent Labor Code § 226(a) claims, which were stayed by the Court pending resolution of that claim in the prior actions. *See* Dkt. No. 19. As the Labor Code § 226(a) claims are no longer at issue in the prior actions[4], the Parties have also agreed to resolve the remaining Labor Code § 226(a) claims through the proposed Settlement. As such, the proposed Settlement Class includes a separate class of Group 2, which encompasses current and former non-exempt employees in California (who are not part of Group 1) and who were issued wages during the period of July 20, 2022, through Preliminary Approval. Settlement Agreement § 1.2.

### 2. *Numerosity*

The numerosity requirement is satisfied if the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticable does not

---

[4] Pursuant to the Court's Order, Dkt. No. 19, the Court stayed the Labor Code § 226(a) claims in this Action in light of the prior actions *Clark v. QG Printing II, LLC, et al.*, CV 18-0899-AWI (EPGx) (E.D. Cal.) ("*Clark*") and *Ramos v. QG Printing II LLC, et al.*, CV 18-4837 (Cal. Super. Ct.) ("*Ramos*"). The *Clark* court has since denied class certification for the *Clark* wage statement claim under Labor Code § 226(a). The *Ramos* matter has since been dismissed with prejudice. Tulyathan Decl. at ¶ 7.

mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). Numerosity is generally satisfied when the class exceeds forty members. *See, e.g., Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).

Here, the Class Members can be ascertained from Defendant's records.  Tulyathan Decl. at ¶ 32.  As of the date of Preliminary Approval, Defendant has represented that the Class consists of an estimated 975 individuals.  *Id.*  Accordingly, here, the Class is sufficiently numerous.

### 3.    Ascertainability

As stated, above, Defendant has already ascertained the Class Members through Defendant's own records.  Tulyathan Decl. at ¶ 32.

### 4.    Typicality

Typicality under Rule 23(a)(3) is satisfied if the representative plaintiff's claims share a common element with the class: *i.e.*, those claims arise from the same course of conduct that gave rise to the claims of other settlement class members. *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988). "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Here, Plaintiff's claims are typical of Class Members because he alleges that he suffered injury from the same specific actions that he alleges harmed other members of the Class.  Specifically, Plaintiff alleged that he was required to use his personal cellphone and/or home phone to call a designated telephone number prior to his scheduled work shift to confirm whether he was to report to that scheduled shift.  Plaintiff alleges that said calls were made off-the-clock, and that he was not paid for the time he spent calling in to the scheduling hotline.  *See* Declaration of James Sims ("Sims Decl.")

at ¶ 3.  In connection with that, Plaintiff also alleges that he was not reimbursed for the costs incurred in connection with the use of his personal cell phone and home phone. Furthermore, Plaintiff alleges that he did not receive reporting time pay on occasions when he reported to work but was not put to work and/or worked less than half of the scheduled shift.  *Id.*  In addition, Plaintiff also alleges that he was not issued accurate wage statements.  *Id.* at ¶ 4.

Defendant utilized the same scheduling policies and practices, and payroll system for Class Members and Plaintiff.  Thus, Plaintiff's claims are typical.  Plaintiff's claims are typical of the class as a whole because they arise from the same factual basis and are based on the same legal theories as those applicable to the Class Members.  Sims Decl. at ¶¶ 3-4; *see Parsons*, 754 F.3d at 685; *see also Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.").

### 5.    *Commonality*

Commonality relates to whether there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied if there is one issue common to class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Commonality "does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). Indeed, "'[e]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011).

Here, the Court has already certified Plaintiff's call-in and reporting time pay claims.  For Group 2, Plaintiff contends the common issues include, among other things, whether Defendant failed to provide accurate itemized wage statements. Courts have routinely certified Labor Code § 226(a) class actions, including in *Stafford v. Brink's,*

*Inc.*, C.D. Cal. Case No. CV-14-01352-MWF (PLAx) and *Magadia v. Wal-Mart*, 2018 WL 339139 (N.D. Cal. Jan. 9, 2018). *See also McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290, 299 (C.D. Cal. 2011); *see also Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361, 374 (C.D. Cal. 2009); *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 521 (C.D. Cal. 2011).

### 6.    *Adequacy*

Adequacy under Rule 23(a)(4) is satisfied if the named plaintiffs have no disabling conflicts of interest with other members of the class and class counsel are competent and well qualified to undertake the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013).

Plaintiff submits that no conflict exists between Plaintiff and the Class because Plaintiff has been damaged by the same alleged policies and practices as all Class Members and has the incentive to fairly represent all Class Members' claims to achieve the maximum possible recovery.  Sims Decl. at ¶¶ 3-5.  Despite the settlement, Plaintiff remains willing to vigorously prosecute this action to the benefit of the Class.

Furthermore, Plaintiff is represented by attorneys who have extensive experience in complex wage and hour litigation as is detailed in each of their declarations supported herewith.  Lee Decl. at ¶¶ 5-7; Tulyathan Decl. at ¶¶ 41-45; Marder Decl. at ¶¶ 8-11.

### 7.    *Common Questions of Law and Fact Predominate*

Plaintiff contends that common questions of law or fact predominate over individual questions pursuant to Rule 23(b)(3). These issues of fact and law raised in this action are common to all members of the classes and predominate in this case. Here, the Court has already certified the call-in and reporting time pay claims, and thus predominance is met.  For the wage statement claims, Defendant's procedures for processing payroll and distributing wage statements to its employees are uniform, and thus the issues of whether employees were issued accurate wage statements predominates across the Class.

### 8.   *Superiority of Class Action*

In this case, a class action is superior to other methods of adjudication and thus satisfies Rule 23(b)(3). Courts have recognized that the class action device is superior to other available methods for the fair and efficient adjudication of controversies involving large number of employees in wage and hour disputes. *See*, *e.g.*, *Hanlon*, 150 F.3d at 1022. "The purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1779 at 174 (3d ed. 2005)). Without class-wide relief in this action, the Class Members would be forced to litigate numerous cases on a piecemeal basis for relatively low potential damages. *See Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104 SC, 2008 WL 4156364, at *11 (N.D. Cal. Sept. 5, 2008) (small interest in individual litigation where damages averaged $25,000-$30,000 per year of work).

### B.   **Arm's Length Negotiations and Discovery Prior to Settlement Warrant Approval**

Courts presume the absence of fraud or collusion in the negotiation of settlement unless evidence to the contrary is offered. *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co*., 834 F.2d 677, 682 (7th Cir. 1987); *In re Chicken Antitrust Litig*., 560 F. Supp. 957, 962 (N.D. Ga. 1980). Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. *National Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004); *Hammon v. Barry*, 752 F. Supp. 1087, 1093-1094 (D.D.C. 1990); *Steinberg v. Carey*, 470 F. Supp. 471, 478 (S.D.N.Y. 1979); *Sommers v. Abraham Lincoln Federal Sav. & Loan Ass'n*, 79 F.R.D. 571, 576 (E.D. Pa. 1978).

While the recommendations of counsel proposing the settlement are not conclusive, the Court can properly take them into account, particularly where, as here,

they have been involved in extensive litigation, informal discovery, appear to be competent, and have experience with this type of litigation. *4 Newberg on Class Actions* § 11.47; *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 ("So long as the integrity of the arm's length negotiation process is preserved, however, a strong initial presumption of fairness attaches to the proposed settlement…and 'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (Citations omitted).

### 1.  *Experience of Class Counsel*

Here, both counsel for Plaintiff and Defendant have a great deal of experience in wage and hour class action litigation.  Plaintiff's attorneys have been approved as class counsel in a number of other wage and hour class actions and have litigated class action cases.  Tulyathan Decl. at ¶¶ 42-45; Lee Decl. at ¶¶ 6-7; Marder Decl. at ¶ 11.  Moreover, Plaintiff's counsel conducted an extensive investigation of the factual allegations involved in this case.  Tulyathan Decl. at ¶ 18; Lee Decl. at ¶ 2.  Thus, based upon such experience and knowledge of the current case, Plaintiff's counsel believe that the current settlement is fair, reasonable, and adequate.  *See id.*  Accordingly, this factor weighs in favor of granting preliminary approval.  *Karam v. Corinthian Colleges Inc.*, Case No. 10-cv-06523-RGK-PJW, 2017 WL 4070889, at *3 (C.D. Cal. July 7, 2017) (Klausner, J.) (granting preliminary approval, and noting lead counsel's experience as supporting preliminary approval).

### 2.  *Investigation and Discovery Prior to Settlement*

Plaintiff's counsel conducted significant discovery, research, and investigation in furtherance of the prosecution of this Action.  This discovery, investigation, and research included, among other things: (a) multiple conferences with Plaintiff and Defendant's counsel; (b) inspection and analysis of thousands of pages of documents and information produced by Defendant, including call logs of the scheduling hotline; (c) numerous depositions taken including of Plaintiff, Defendant's Rule 30(b)(6) witnesses—Ken Eazell, Aaron Hess, Frank Nofuentes, Angelo Ortiz, and Kevin Brasser, several class

member declarants, and Defendant's expert witness—Elaine Reardon, Ph.D.; (d) analysis of the legal positions taken by Defendant; (e) analysis of potential class-wide damages, including reviewing class records and data provided by Defendant formally as well as for purposes of mediation; and (f) research of the applicable law with respect to the claims and theories of liability asserted in the Complaint.  Tulyathan Decl. at ¶ 18.

In addition to the formal discovery conducted and in advance of mediation, the Parties engaged in informal discovery.  Defendant provided information as to the size and scope of the putative class, including the number of putative class members at each facility, number of former employees, hourly rates of pay, number of workweeks, and number of pay periods.  *Id*. at ¶ 19.  Defendant provided data up to March 2022.  Plaintiff then hired an expert to process and analyze the data, and extrapolate total maximum potential liability to the entire putative class for the entire relevant time period.  *Id*. at ¶ 20.  Thus, Plaintiff has obtained and analyzed information sufficient to assess liability and damages.  Based thereon, the following represents Plaintiff's analysis of Defendant's potential liability.

- Off-the-clock claim:  Plaintiff's expert extrapolated the data and calculated the unpaid wages for this claim to be approximately $159,475.00.  This amount was calculated based on an assumption that employees spent 5 minutes off-the-clock per weekly pay period checking their schedules via the scheduling hotline and/or Inside Quad.

- Reporting time pay claim:  Plaintiff's expert extrapolated and calculated the reporting time pay owed to the class at approximately $6,755,813.33.  This amount was calculated based on an assumption that one shift was cancelled per pay period, at four hours of reporting time pay per cancelled shift.

- Waiting time penalties:  Plaintiff's expert extrapolated and calculated waiting time penalties for unpaid wages at approximately $2,288.426.40, based upon class data provided by Defendant.

- Expense reimbursement claim:  Plaintiff's expert calculated the unpaid

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT

expense reimbursement at approximately $381,725.00, based on an assumption of $5.00 of reimbursement per weekly pay period.

- <u>Wage statement claim</u>:  Plaintiff's expert calculated penalties under Labor Code § 226(e) at $1,550,400.00.

Tulyathan Decl. at ¶ 23.  Based on these amounts, the total class-wide damages and penalties amount to approximately $11,135,839.73.  *Id*.

With respect to Defendant's exposure under the PAGA, based on 36,491 pay periods at issue during the relevant PAGA period, Plaintiff's counsel calculated PAGA penalties of at least $3,649,100.00.  Tulyathan Decl. at ¶ 24.  This amount was calculated based on the $100 initial violation penalty under the PAGA, which assumes that the Court would not "stack" PAGA penalties for distinct violations of the Labor Code. Courts have recently been hesitant to award a higher PAGA penalty for "subsequent" violations where there is no prior citation by the Labor Commissioner, which renders the evaluation of the potential PAGA penalties without "stacking" reasonable. *C.f. Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1144 (9th Cir. 2021) ("Virgin was not notified by the Labor Commissioner or any court that it was subject to the California Labor Code until the district court partially granted Plaintiffs' motion for summary judgment. On this basis, we reverse the district court's holding that Virgin is subject to heightened penalties for any labor code violation that occurred prior to that point."). While *Bernstein* addresses whether the higher subsequent penalty should be applied, defendants often argue that this decision supports their position that the court should not award multiple penalties for different predicate violations of the Labor Code during the same pay period. Accordingly, evaluating the Settlement compared to a potential penalty of $100 per pay period is fair, adequate, and reasonable.  Additionally, the Court also retains discretion to reduce PAGA penalties.  For example, in the Court of Appeal's decision in *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018), while the plaintiff prevailed on his PAGA claim upon trial, the trial court reduced the maximum PAGA penalty amount by 90%,

citing the employer's good faith attempt at complying with the law.  *Id*. at 517.  Upon

review, the Court of Appeal found such reduction to be proper.  *Id*. at 539.

With respect to defenses, Defendant contends that there is no liability to the class,

that the class should not be certified, and that it would have prevailed had the matter

proceeded forward to summary judgment.  Plaintiff would have also been faced with

"good faith" defenses regarding the imposition of waiting time penalties and wage

statement penalties.  In *Naranjo v. Spectrum Security Services, Inc.*, __ Cal. Rptr. 3d __,

2023 WL 2261253 (Feb. 27, 2023), *review granted* 2023 WL 3745105 (May 31, 2023),

the court upheld an employer's good faith defense to the plaintiff's claim for waiting time

penalties, pursuant to Labor Code § 203.  The employer argued that it had a viable legal

defense, which precluded the imposition of waiting time penalties because its acts were

not "willful" within the meaning of the statute.  *Naranjo* also permitted a good faith

defense to rebut the plaintiff's claim for penalties, pursuant to Labor Code § 226.  Here,

Defendant would have argued that it was not liable for waiting time or wage statement

penalties because it acted in good faith.  As an additional defense Labor Code § 226,

Defendant would likely raise that employees did not suffer any "injury" or that the

violations were "knowing and intentional" as defined under Labor Code § 226(e).

Should Defendant succeed on these defenses, class members would recover $0 for

waiting time penalties under Labor Code § 203 and statutory penalties under Labor Code

§ 226.  Taking these risks into account, Plaintiff's total exposure for class claims is

estimated at a realistic $7,297,013.33.  Tulyathan Decl. at ¶ 26.

Additionally, there was significant risk that Defendant would prevail on the merits

at summary judgment in light of the new evidence it presented after class certification.

Indeed, the Court commented in the Order on Defendant's Motion for Reconsideration,

Dkt. No. 66, that Defendant presented new evidence from its expert witness indicating

that a significant portion of class members may not have been subjected to the call-in

practice at issue, which would undermine the existence of a class-wide call-in practice

that was certified.  The Court also commented that it would address this new evidence on

the merits at summary judgment.  Given the Court's indication and the risk that
Defendant would prevail on the merits at summary judgment and/or at trial in light of this
new evidence, Plaintiff's counsel is of the opinion that the Settlement is fair, reasonable,
and adequate, and is in the best interest of Class Members in light of all known facts and
circumstances and risks inherent in litigation.  Tulyathan Decl. at ¶ 27; Lee Decl. at ¶ 3.
Additionally, Defendant has also represented that it has closed its Merced facility as of
June 2023, which would effectively cut off any liability with respect to the Merced
facility as of the closure date.  Tulyathan Decl. at ¶ 28.

Based on the potential exposure discussed above, the total amount of class
exposure ranges from $7,297,013.33 to $11,135,839.73.  *Id*. at ¶ 29.

### 3.    *Risk of Continued Litigation*

To assess the fairness, adequacy, and reasonableness of a class action settlement,
the Court must weigh the immediacy and certainty of substantial settlement proceeds
against the risks inherent in continued litigation. *In re General Motors Corp.*, 55 F.3d
768, 806 (3d Cir. 1995) ("present value of the damages plaintiffs would likely recover if
successful, appropriately discounted for the risk of not prevailing, should be compared
with the amount of the proposed settlement."); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d
Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979); *Manual
for Complex Litigation, Fourth* § 21.62 at 316.

Here, the settlement affords fair relief to the Class, given that it avoids significant
legal and factual battles that otherwise may have prevented the Class from obtaining any
recovery at all.  While Plaintiff's counsel believe that the class claims are meritorious,
they are experienced and realistic, and understand that the outcome of a trial, and the
outcome of any appeals that would inevitably follow if Plaintiff prevailed, are inherently
uncertain in terms of both outcome and duration.  Tulyathan Decl. at ¶ 30.

As evidenced by the record in this case, litigation has been lengthy and
contentious, and has already led to several attempts to appeal by Defendant.  Had
litigation continued, it is likely that further appeals will be filed by the Parties.  Given

these uncertainties through this settlement, the risks of continued litigation have been eliminated while providing a substantial benefit to the Class.

### 4. The Complexity, Expense, and Likely Duration of Continued Litigation Against the Settling Defendant Favors Approval

Another factor considered by courts in approving a settlement is the complexity, expense, and likely duration of the litigation. *Officers of Justice*, 688 F.2d at 625; *Girsh*, 521 F.2d at 157. In applying this factor, the Court must weigh the benefits of the settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *Young v. Katz*, 447 F.2d 431, 433-34 (5th Cir. 1971).

The idea of balancing a fair recovery now, with settlement dollars being paid out now, as opposed to a years-long litigation and appeals process regarding various potential issues, is a significant factor in favor of approval of the class settlement. *DIRECTV*, 221 F.R.D. at 526-27 ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation.").

The settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *4 Newberg on Class Actions* § 11.41.

### 5. Non-Admission of Liability by Defendant

Finally, Defendant denies any liability or wrongdoing of any kind associated with the claims alleged in this lawsuit. Defendant maintains that it has complied with all California wage and hour laws. Because of such denial, if this case is not resolved, it will likely continue to be a long and protracted litigation, which will involve multiple appeals.

### 6. Settlement Was the Result of Negotiations Facilitated By a Neutral and With Approval of the Class Representative

As stated above, the Parties participated in a second mediation session with Michael J. Loeb, Esq., and continued settlement negotiations thereafter with the

assistance of Mr. Loeb.  It was only after months of continued post-mediation negotiations facilitated by Mr. Loeb that the Parties were able to reach a settlement. Tulyathan Decl. at ¶ 12.  The Class Representative further authorized entering into the settlement, which resulted in the memorandum of understanding and formal settlement agreement being signed.  Sims Decl. at ¶ 6.

## C.    Enhancement Payment to the Class Representative

Pursuant to the terms of the Agreement, Plaintiff will also request an enhancement payment, up to a maximum of Ten Thousand Dollars ($10,000.00), which is to compensate the Plaintiff for the actions the Plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort he expended in pursuing the litigation, as well as for executing a general release and a California Civil Code § 1542 waiver.  Settlement Agreement § 6; *see Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998); *Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299-300 (N.D. Cal. 1995).  As will be fully detailed in Plaintiff's Motion for Final Approval, Plaintiff's request for an enhancement award meets the standard set forth in *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157 (9th Cir. 2013).

Here, Plaintiff met and conferred with Class Counsel on a number of occasions to discuss the case, including providing substantive information regarding Defendant's practices.  Sims Decl. at ¶ 7.  As part of his duties as the Class Representative, Plaintiff provided invaluable information regarding Defendant's wage and hour practices, and the procedures that he followed during his employment with Defendant.  *Id.* at ¶ 8.  Plaintiff also prepared for and sat for his deposition.  Plaintiff brought this action as a class action instead of an individual action so that the Class would be able to benefit from this case. *Id.* at ¶ 9.  Because the claims alleged by Plaintiff involved the payment of fees and costs to the prevailing party, Plaintiff could have possibly faced paying the fees and costs of Defendant, had Plaintiff not prevailed in this action.  *Id.* at ¶ 10.  Plaintiff's name was listed on the class action complaint.  He understood that this case would be in the public

record and there was a possibility that a class action would receive more notoriety than an individual action and undertook such notoriety. *Id.* at ¶ 11. Plaintiff has made himself available throughout this litigation, including searching for and gathering documents, reviewing his employment documents, reviewing the pleadings in this case including the PAGA letter, the Complaint, his declarations, and the Settlement Agreement, and preparing for and sitting for his deposition. *Id.* at ¶ 12.

Finally, as part of the Settlement, Plaintiff has executed a full and general release of all claims, including a California Civil Code § 1542 waiver, which other class members did not have to provide. Sims Decl. at ¶ 13. Plaintiff understands that the incentive payment is conditioned on final approval of the settlement. *Id.* at ¶ 14.

### D.     The PAGA Settlement is Fair, Reasonable, and Adequate

The Parties also seek approval of the PAGA Penalties, distribution plan of the PAGA Penalties, and the release of the Released PAGA Claims as set forth in the Settlement Agreement. California Labor Code § 2699(l)(2) provides that the court shall review and approve any settlement of any civil action filed pursuant to PAGA. The California Supreme Court has held that an employee who sues an employer under PAGA need not satisfy class action requirements. *Arias v. Superior Court*, 46 Cal. 4th 969, 974 (2009). For example, "PAGA has no notice requirements for unnamed aggrieved employees, nor may such employees opt out of a PAGA action." *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1122 (9th Cir. Cal. 2014).

The Settlement allocates $100,000.00 of the Gross Settlement Amount as PAGA Penalties sought as part of the proposed PAGA settlement. Settlement Agreement §§ 1.20, 1.21, 7. Pursuant to Labor Code § 2699(i), 75% of these penalties are to be paid to the LWDA. Accordingly, the Settlement provides for $75,000.00 to be paid to the State of California from the Gross Settlement Amount. *Id.* The remaining $25,000 will be distributed to all PAGA Employees, which encompasses Class Members who worked for Defendant at any time from April 6, 2019, through Preliminary Approval. *Id.* PAGA Employees will be paid a pro rata portion of the PAGA Penalties, calculated based on the

number of pay periods each PAGA Employee performed work for Defendant in
California during the PAGA Period, as compared to the total number of pay periods all
PAGA Employees performed work for Defendant in California during the PAGA Period.
Settlement Agreement § 7.

The PAGA Employees will not be required to submit a claim form in order to be
issued a check for their share of the PAGA Penalties. PAGA Employees will not have
the opportunity to opt out of the release of the Released PAGA Claims. Settlement
Agreement §§ 1.28, 15.3.

This proposed PAGA Penalties is fair, reasonable, and adequate to all concerned,
and not the product of fraud, collusion, or overreaching. The proposed PAGA Penalties is
the product of informed negotiations. As described above, prior to reaching the proposed
settlement in this case, Plaintiff's counsel performed significant work to investigate,
research, and analyze the claims, defenses, legal and factual issues, and potential
recovery in this case.

Additionally, as noted above, there is risk that Plaintiff would not prevail on the
merits of his Labor Code claims at summary judgment or at trial in light of the new
evidence presented by Defendant. Thus, the PAGA claims, which are derivative in
nature, is also potentially in jeopardy. The settlement was the result of arm's length
settlement negotiations facilitated by a well-known mediator and represents a fair
resolution in light of the risks associated with further litigating the claims.

Accordingly, based on the terms set forth in the Parties' Settlement Agreement,
Plaintiff respectfully requests the Court approve the PAGA Penalties, distribution plan of
the PAGA Penalties, and the release of the Released PAGA Claims.

### E.    Adequacy of Class Notice

"Notice is satisfactory if it 'generally describes the terms of the settlement in
sufficient detail to alert those with adverse viewpoints to investigate and come forward
and be heard.'" *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)
(citation omitted). For a Rule 23(b)(3) Settlement class, the Court must "direct to class

members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, Defendant will provide the addresses of the Class Members from its records, and the Settlement Administrator will perform skip tracing for those individuals whose addresses are no longer accurate. Settlement Agreement §§ 13.2.1, 13.2.4. Subject to Court approval, the Settlement Administrator shall send the Class Notice to Class Members in the form attached as Exhibit A to the Settlement Agreement. Settlement Agreement § 13.3.1. Any Class Member who wishes to object to the settlement may do so by submitting an objection with the Court. Settlement Agreement § 14.

### F.    Administration of the Settlement

The Parties have agreed to utilize Phoenix Settlement Administrators to administer the settlement. Settlement Agreement § 1.35; Tulyathan Decl. at ¶ 39. Counsel for the Parties obtained several settlement administration bids. Given that Phoenix Settlement Administrators provided the lowest quote, the Parties agreed to use Phoenix Settlement Administrators. Tulyathan Decl. at ¶ 39. The Settlement Administrator's duties are as follows:

> This administration duty shall include without limitation, setting up an escrow account for funding of the Settlement, accepting payments pursuant to the Payment Procedure described herein, obtaining tax identification number(s) for Defendant applicable to the Settlement, calculating the Class Member Payments, performing an initial National Change of Address ("NCOA") search upon receipt of the Class Member mailing addresses, mailing and translating the Class Notices, performing skip tracing on Class Notices returned as undeliverable, establishing a hotline telephone number to communicate with Class Members

about the Settlement, reviewing and processing requests for exclusion, mailing the Class Members Payments and tax forms to the Participating Class Members and PAGA Employees, and making all required distributions.  The Settlement Administrator will report payment of the individual Class Member Payments to all required taxing and other authorities and issue Internal Revenue Service Form W-2, 1099s, or other tax reporting forms. The Settlement Administrator will establish a Qualified Settlement Fund ("QSF"), pursuant to Section 468B(g) of the Internal Revenue Service, for the purposes of administering the Settlement.    Subject to Court approval, all Settlement Administration Costs shall be taken from the Gross Settlement Amount.  The Parties expect Settlement Administration Costs to not exceed Thirteen Thousand Two Hundred Fifty Dollars (**$13,250.00**).    Any unapproved amount of Settlement Administration Costs shall be allocated to the NSA and apportioned to the Participating Class Members as described in Paragraph 4 of this Settlement Agreement.

Settlement Agreement § 8.

## G.    The Scope of the Releases Are Appropriately Limited

Here, Class Members will only release claims that were alleged in the operative Complaint specific to their Group.  The Released Claims for Group 1 Class Members is as follows:

Upon the Effective Date and Defendant's funding of the QSF, Group 1 Class Members (other than those who submit a valid opt-out/Request for Exclusion) shall release Defendant from all causes of action and factual or legal theories arising during the Group 1 Class Period that were alleged in the operative Complaint (or LWDA notice) or arise from facts alleged in the operative Complaint (or LWDA notice), including all damages, penalties, interest and other amounts recoverable under said claims, causes of action or legal theories of relief, based on failure to pay wages (including overtime and minimum wages), failure to provide accurate wage statements, failure to timely pay all final wages, unfair business practices, alleged violations of Labor Code sections 201-204, 218.5, 226(a), 226.3, 510, 558,

> 1174, 1194, 1198, 1199, 2699, Business and Professions Code section 17200 et seq., and the applicable IWC Wage Orders. Class Members shall not waive section 1542 of the California Civil Code.

Settlement Agreement § 12.3.1.  In other words, Group 1 Class Members will only be providing a release for the certified class claims.  Given that the expense reimbursement claim under Labor Code section 2802 was not certified by the Court at class certification, Group 1 Class Members will not be providing a release of that claim.

Group 2 Class Members will provide the following release:

> Upon the Effective Date and Defendant's funding of the QSF, Group 2 Class Members (other than those who submit a valid opt-out/Request for Exclusion) shall release Defendant from all causes of action and factual or legal theories arising during the Group 2 Class Period for violation of Labor Code sections 226(a) that were alleged in the operative Complaint (or LWDA notice) or arise from facts alleged in the operative Complaint (or LWDA notice), including all damages, penalties, interest and other amounts recoverable under said claims, causes of action or legal theories of relief. Class Members shall not waive section 1542 of the California Civil Code.

Settlement Agreement § 12.3.2.  As the Court can see, Group 2 Class Members will only be releasing claims under Labor Code section 226(a).

Further, regardless of whether a valid Request for Exclusion is submitted, PAGA Employees will release the following claims under the PAGA:

> PAGA Employees shall release Defendant from any liability for civil penalties recoverable under PAGA for violations during the PAGA Period under PAGA based on any factual or legal theories that were alleged in the operative complaint and the LWDA notice or arise from facts alleged in the operative complaint and the LWDA notice, including for the following California Labor Code sections: 201-204, 226(a), 510, 558, 1174, 1198, 1199, 2802, and 2699. PAGA Employees shall not waive section 1542 of the California Civil Code.

35

Settlement Agreement §§ 12.4, 15.3.

As detailed above, Class Members will be releasing only those claims specific to their group during their specific class period that were alleged in the operative Complaint, and will not be providing a general release or waiver pursuant to California Civil Code § 1542.

### H.    Attorneys' Fees and Costs

Under California law, the award of attorneys' fees in common fund wage and hour class action settlements is proper under the percentage method. *See Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480, 503 (Aug. 11, 2016) ("We join the overwhelming majority of federal and state courts in holding that when class action litigation establishes a monetary fund for the benefit of the class members, and the trial court in its equitable powers awards class counsel a fee out of that fund, the court may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created."). Under the percentage of the fund method, the Court's objective remains to "mimic the market" in fixing a reasonable fee. *See Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (J. Posner) ("When a fee is set by a court rather than by contract, the object is to set it at a level that will approximate what the market will set... The judge, in other words, is trying to mimic the market in legal services.").

Pursuant to the terms of the Agreement, and without opposition from Defendant, Class Counsel will move for attorneys' fees and costs contemporaneous with the Motion for the Final Approval.  Plaintiff's counsel will seek an award of attorneys' fees of p to Three Hundred Eighty-Three Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($383,333.33), which is approximately one-third of the Gross Settlement Amount, and reimbursement of actual costs of up to Fifty Thousand Dollars ($50,000.00).  Settlement Agreement § 5.

## IV.    CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court grant preliminary approval for the proposed class action settlement and schedule a "fairness

hearing," *i.e.*, a hearing on the final approval of the settlement.

DATED: November 9, 2023                DIVERSITY LAW GROUP, P.C.

                                       By: */s/ Kwanporn "Mai" Tulyathan*
                                              Larry W. Lee
                                              Kwanporn "Mai" Tulyathan
                                       Attorneys for Plaintiff and the Class

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**