LARRY W. LEE, Bar No. 228175
lwlee@diversitylaw.com
KWANPORN "MAI" TULYATHAN, Bar No. 316704
ktulyathan@diversitylaw.com
**DIVERSITY LAW GROUP, P.C.**
515 S. Figueroa Street, Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile

WILLIAM L. MARDER, Bar No. 170131
bill@polarislawgroup.com
**Polaris Law Group**
501 San Benito Street, Suite 200
Hollister, CA 95023
(831) 531-4214
(831) 634-0333 facsimile

Attorneys for Plaintiff James Sims,
the Class, and Aggrieved Employees

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SIMS, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>QG PRINTING II LLC, a Connecticut limited liability company; 74 QG PRINTING II LLC, business organization, form unknown; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:20-cv-01632-DMG-DTBx<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:       April 19, 2024<br>Time:       10:00 A.M.<br>Courtroom: 8C<br>Judge:      Hon. Dolly M. Gee |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 19, 2024, at 10:00 A.M., or as soon thereafter as the matter can be heard in Courtroom 8C of the United States District Court, Central District of California, located at 350 West 1st Street, Los Angeles, California, 90012, before the Honorable Dolly M. Gee, Plaintiff James Sims ("Plaintiff") will and hereby does move this Court for an Order finally approving the proposed class action settlement. Specifically, Plaintiff respectfully requests that the Court issue an Order granting final approval of the proposed class and PAGA action settlement.

Given that this is a Motion for Final Approval of a settlement reached with Defendant QG Printing II, LLC ("Defendant"), Plaintiff does not anticipate that Defendant will oppose this Motion.

This Motion is based upon this Notice of Motion and Motion for Final Approval of Class Action Settlement, the attached Memorandum of Points and Authorities, the accompanying Declarations of Larry W. Lee, Kwanporn "Mai" Tulyathan, William L. Marder, and Lluvia Islas on behalf of the Settlement Administrator, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

DATED: April 5, 2024                    DIVERSITY LAW GROUP, P.C.

By: _/s/ Kwanporn "Mai" Tulyathan_
    Larry W. Lee
    Kwanporn "Mai" Tulyathan
Attorneys for Plaintiff and the Class

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 6
II. LITIGATION HISTORY AND SUMMARY OF ARGUMENT ...................... 6
   A. Overview of Plaintiff's Claims and Factual Allegations ............................... 6
   B. Summary of the Litigation and Investigation ............................................... 7
III. THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND SUCCESSFULLY CARRIED OUT ............................................................ 9
   A. Dissemination of Notice ............................................................................... 9
   B. No Objections Have Been Filed To Date and No Requests for Exclusions Have Been Submitted ................................................................................ 10
IV. THE SETTLEMENT ..................................................................................... 10
V. THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL ......................................................................................................... 11
   A. The Strength of Plaintiff's Case Supports Settlement ................................ 12
   B. Risks, Expense, and Duration of Continued Litigation Supports Settlement ............................................................................................................... 12
   C. The Settlement Amount Favors Settlement ............................................... 13
   D. The Extent of Investigation Favors Settlement .......................................... 14
   E. The Recommendations of Counsel Favor Approval of the Settlement ....... 15
   F. The Class Has Responded Favorably to the Proposed Settlement .............. 15
   G. The Procedure Through Which the Settlement Was Achieved Supports Final Approval ............................................................................................... 16
VI. PLAINTIFF REQUESTS APPROVAL OF THE PAGA SETTLEMENT ....... 17
VII. CONCLUSION ............................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980) .............................. 15

*Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1122 (9th Cir. Cal. 2014) ............. 18

*Bellinghausen v. Tractor Supply Co.*, 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015) ............................................................................................................................... 13

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ....................................... 15

*Brown v. CVS Caremark*, United States District Court, Central District, Case No.: 2:15-cv-07631-JFW-PJW ................................................................................................. 14

*Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) ..... 12, 14, 15, 16

*Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004) .............................. 16

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ....................................... 11

*Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) ............................................................................................................................... passim

E*llis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ........................... 15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ............................... 11, 16

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) .............................. 15

*In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir.2000) .............................. 13

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) .................. 15

*Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000) ..................................................... 11

*Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) .......................................... 15

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) .......................... 17

*McKenzie v. Federal Express Corp.*, 2012 US Dist Lexis 103666 (C.D. Cal. July 2, 2012) ............................................................................................................................... 14

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

*Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) . 12

*Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982) .......................................................................... 16, 17

*Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) ...................... 15

*Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ................................. 15

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................... 16, 17

*Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ...................................... 15, 17

**State Cases**

*Arias v. Superior Court*, 46 Cal. 4th 969, 974 (2009) ....................................................... 18

**Statutes**

Business and Professions Code § 17200, et seq. ................................................................. 7

Labor Code § 226(a) ............................................................................................................ 7

Labor Code § 2698, et seq. .................................................................................................. 7

Labor Code § 2699(i) ......................................................................................................... 18

Labor Code § 2699(l)(2) .................................................................................................... 18

Labor Code § 2802 ............................................................................................................... 7

**Other Authorities**

4 *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002) .......................................... 17

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* § 11.45 (4th ed. 2002) 13

*Manual For Complex Litigation* (Fourth) § 30.42) ...................................................... 9, 17

**Rules**

Federal Rule of Civil Procedure 23(e) ............................................................................... 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

By this motion, Plaintiff James Sims ("Plaintiff") seeks final approval of a class-wide settlement reached between Plaintiff and Defendant QG Printing II, LLC ("Defendant") (Plaintiff and Defendant collectively referred to herein as the "Parties"). On December 28, 2023, the Court entered an Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"). Dkt. No. 80. The Parties now seek this Court's final approval of the settlement.

The settlement requires Defendant to pay a total of $1,150,000.00, a sum which represents a substantial recovery for the members of the Class. **Again, this settlement is non-reversionary, such that no monies will revert to Defendant.** Further, there was no claims process involved, such that Class Members will automatically be sent a settlement check representing their individual shares of the settlement so long as they did not opt-out. Class Members were given an opportunity to object or opt-out of the settlement. **There were no opt out requests and no objectors.** Accordingly, this shows that the Class Members have reacted favorably to the settlement. Moreover, all of this Court's orders concerning dissemination of the Notice of Settlement of Class Action ("Class Notice") have been followed.

Based thereon, Plaintiff respectfully requests that final approval be granted in its entirety.

## II.   LITIGATION HISTORY AND SUMMARY OF ARGUMENT

### A.   Overview of Plaintiff's Claims and Factual Allegations

On June 1, 2020, Plaintiff filed the operative class and representative action complaint against Defendant in the Superior Court of California, County of Riverside. Dkt. No. 1-2. On August 14, 2020, Defendant removed the action to federal court. Dkt. No. 1.

The operative Complaint alleges the following causes of action: (1) failure to pay

wages; (2) violation of Labor Code § 2802; (3) violation of Labor Code § 226(a); (4) violation of Business and Professions Code § 17200, et seq.; and (5) violation of Labor Code § 2698, et seq., the Private Attorneys General Act ("PAGA"). Declaration of Mai Tulyathan ("Tulyathan Decl.") at ¶ 2.

Specifically in this action, Plaintiff alleges that during his off hours, he was required to use his personal telephone to call a designated telephone number and/or log in via an online website before his scheduled work shift to confirm whether he will in fact be working that particular shift. Plaintiff alleges that he was not paid for the time "calling in" to check his schedule off-the-clock and that he was not reimbursed for the costs incurred in connection therewith. Plaintiff also alleges that he was not paid reporting time pay on occasions when he reported to work but was not permitted to work and/or worked less than half of the scheduled shift. In addition, Plaintiff asserts derivative wage statement violations based on the above violations, and independent wage statement violations, alleging that the wage statements identified inaccurate hourly rates of pay for overtime and double time wages, as well as an incorrect legal name of the employer. *Id.* at ¶ 3.

### B. Summary of the Litigation and Investigation

As the Court can see from the docket and as detailed in the preliminary approval motion, the Parties have engaged in significant motion practice since the commencement of this Action, including vigorously litigating class certification. On March 4, 2022, the Court issued an Order granting Plaintiff's Motion for Class Certification in part and certified Plaintiff's call-in and reporting time pay claims. Dkt. No. 47. In particular, the Court certified a class of "[a]ll current and former non-exempt press production employees of Defendant QG Printing II LLC who worked at Defendant's Riverside and/or Merced facility in the State of California at any time between April 6, 2016 through the present." Dkt. No. 47, p. 31. The Parties heavily litigated class certification, including Defendant filing a motion for reconsideration and subsequently a petition for review in the Ninth Circuit.

Throughout the litigation, Plaintiff also engaged in extensive formal discovery, including propounding several rounds of written discovery and taking various depositions of Defendant's FRCP 30(b)(6) witnesses and expert witness and over a dozen subpoenaed witnesses/class members. Plaintiff's counsel has also defended Plaintiff's deposition. Tulyathan Decl. at ¶ 6. Defendant has also produced class data, thousands of pages of call logs, and documents pertaining to the relevant policies and practices at issue. The Parties also engaged in expert discovery. *Id*. at ¶ 7. Furthermore, the Parties conducted informal discovery in connection with mediation and settlement negotiations. As part of informal discovery, Defendant provided information regarding the size and scope of the class. Plaintiff also retained an expert witness to conduct data and exposure analysis for purposes of mediation. *Id*. at ¶ 8.

In addition, the Parties engaged in thorough, arm's length negotiations over two mediation sessions. On September 7, 2021, the Parties participated in mediation with the Honorable Kevin Murphy (Ret.), but were unable to reach an agreement at the mediation and resumed litigation. Tulyathan Decl. at ¶ 10. On June 28, 2023, the Parties participated in a second mediation with neutral Michael J. Loeb, Esq. *Id*. at ¶ 11. The Parties engaged in continued post-mediation negotiations facilitated by Mr. Loeb for several months and ultimately reached this settlement. *Id*.

The detailed terms of the settlement are set forth in the Parties' Joint Stipulation of Class Action Settlement ("Settlement Agreement" or "Stipulation"), and were previously provided to this Court. Dkt. No. 76-1, at p. 14. On December 28, 2023, this Court entered its order granting preliminary approval of the settlement (the "Preliminary Approval Order"). Dkt. No. 80. As held in the Preliminary Approval Order, the Class for settlement purposes is defined as follows:

> All current and former non-exempt press production employees at the Merced and Riverside California plants who used Defendant's scheduling hotline or Inside Quad for purposes of checking their schedule during the period of April 6, 2016, through Preliminary Approval" ("Group 1"); and

> All other current and former non-exempt employees in California (who are not part of Group 1) and who were issued wages during the period of July 20, 2022, through Preliminary Approval" ("Group 2") (together, "Group 1" and "Group 2" comprise the "Class" or "Settlement Class").

Dkt. No. 80, p. 3.

The proposed settlement meets the criteria for final approval which are set forth in the *Manual for Complex Litigation, Fourth*, and is well within the range of what would be fair, reasonable, and adequate in this case, as evidenced by the lack of objections and opt-outs. Thus, Plaintiff requests that the Court grant final approval.

### III. THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND SUCCESSFULLY CARRIED OUT

#### A. Dissemination of Notice

As noted above, preliminary approval was granted on December 28, 2023. Dkt. No. 80. Plaintiff provided the Class Notice to the Court-approved Settlement Administrator—Phoenix Settlement Administrators (the "Settlement Administrator"). The Parties, through the work of the Settlement Administrator, have complied with this Court's orders concerning dissemination of the Class Notice. *See* Declaration of Lluvia Islas Regarding Notice and Settlement Administration ("Admin. Decl."), Dkt. No. 81-5, ¶¶ 2-10.

The Class Notice was mailed to all 780 Class Members based on the Class List provided by Defendant. Supplemental Declaration of Lluvia Islas Regarding Notice and Settlement Administration ("Supp. Admin. Decl.") at ¶ 3. Based on the Class List provided by Defendant, 780 out of 1,008 individuals on the Class List are Class Members. The remaining 228 individuals are PAGA Employees[1] and are not Class Members belonging to Group 1 and/or Group 2. Supp. Admin. Decl. at ¶ 3.

After initial mailing, 22 Class Notices were returned to the Settlement

---

[1] The term "PAGA Employees" is defined as Class Members who worked for Defendant at any time from April 6, 2019, through Preliminary Approval (the "PAGA Period").

Administrator with an invalid address, and the Settlement Administrator conducted skip tracing. Admin. Decl., Dkt. No. 81-5, ¶ 6. Out of these, 16 Class Notices were remailed after updated addresses were located through skip tracing. *Id*. at ¶¶ 6-7. The total number of undeliverable Class Notices is 6. This represents a 99.4% notice success rate.

**B.  No Objections Have Been Filed To Date and No Requests for Exclusions Have Been Submitted**

As of the date of this Motion, not a single individual has filed any objection or requested to opt out of the current settlement. *See* Supp. Admin. Decl. at ¶¶ 5-9. This represents a 100 percent participation rate by Class Members, further evidencing the favorable view of the settlement from Class Members. Supp. Admin. Decl. at ¶ 9.

**IV.  THE SETTLEMENT**

The Settlement terms were summarized in detail in the Motion for Preliminary Approval, and Plaintiff respectfully incorporates those arguments herein so as to avoid unnecessary duplication. The specific terms of the settlement are set forth in the Settlement Agreement filed on November 9, 2023, Dkt. No. 76-1, p. 14. The principal terms, as preliminarily approved by the Court are:

a.  Defendant will pay a Gross Settlement Amount of $1,150,000.00. This sum includes payments to Class Members, the service award to the Class Representative, award of attorneys' fees and costs, payment of PAGA penalties, and settlement administration costs. The settlement is non-reversionary, meaning that no funds will revert back to Defendant.

b.  The sum available for payments to Class Members after deduction of the service award, award of attorneys' fees and costs, payment of PAGA penalties, and settlement administration costs is the Net Settlement Amount, which is estimated at $612,927.45. Admin. Decl., Dkt. No. 81-5, ¶ 13.

c.  No claim forms were necessary for any Class Member to participate in the settlement and receive their share of the settlement. Thus, any Class Member who did not opt-out through the notice process will automatically receive a settlement check

representing their respective individual share of the settlement proceeds. On average, based on per pay period value, each Class Member will be paid approximately $194.55, with the highest individual settlement payment estimated to be $2,953.16. Admin. Decl., Dkt. No. 81-5, ¶ 15.

    d.    All of this Court's orders in connection with the settlement administration process have been followed. *See generally*, Admin. Decl., Dkt. No. 81-5, and Supp. Admin. Decl.

In sum, the settlement represents a compromise between the positions and evaluations of the two sides to this controversy. There were significant disagreements between the Parties as to the facts and the law.

## V. THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval. The court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

The fairness, reasonableness, and adequacy of any class action settlement depends on "the relative strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel…and the reaction of class members to the proposed settlement." *Hanlon* 150 F.3d at 1026. Here, as set forth in the Motion for Preliminary Approval and discussed below, the factors for final approval of this settlement have been established.

### A. The Strength of Plaintiff's Case Supports Settlement

This factor is generally satisfied when plaintiffs must overcome barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Even though Plaintiff prevailed on his motion for class certification and on the appeal, Plaintiff would still have to prove his case at trial. Significantly, there is significant risk that Defendant would prevail on liability at summary judgment based on new evidence that Defendant obtained from its expert witness. The Court acknowledged this new piece of evidence in the Order on Defendant's Motion for Reconsideration, Dkt. No. 66, which could undermine the existence of class-wide call-in practices that was already certified.

Therefore, this factor favors settlement. *See Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) (factor favors final approval where "[p]laintiffs acknowledge that, if the settlement is not approved, they will encounter significant obstacles in establishing their claims"); see *also Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the relative strength of plaintiffs' case favored settlement because plaintiffs admitted they would face hurdles in proving liability and damages).

### B. Risks, Expense, and Duration of Continued Litigation Supports Settlement

"Difficulties and risks in litigating weigh in favor of approving a class settlement." *Dyer*, 2014 WL 5369395, at *3 (citation omitted). Briefing on liability and damages, including with respect to Defendant's anticipated motion for summary judgment, as well as preparation for trial would have been time-consuming and expensive. In addition, even if Plaintiff had prevailed at trial, there is a strong likelihood that Defendant would have appealed the verdict given the record of litigation in this case. Indeed, in response to the Court granting class certification, Defendant filed a motion for reconsideration, motion to stay, and a petition for permission to appeal to the Ninth Circuit Court of Appeal. Dkt. Nos. 50, 68, 68-3. Thus, the risks, expense, and duration of continued

litigation favor final approval of the settlement.  *See Dyer*, 2014 WL 5369395, at *3 ("This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation.").

### C. The Settlement Amount Favors Settlement

The standard of review for class settlements is whether the Settlement is within a range of reasonableness. As Professor Newberg comments:

> Recognizing that there may always be a difference of opinion as to the appropriate value of settlement, the courts have refused to substitute their judgment for that of the proponents. Instead the courts have reviewed settlements with the intent of determining whether they are within a range of reasonableness.…

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* § 11.45 (4th ed. 2002).

Numerous courts have held that **gross** settlements approximating between only 8 and 25% of the defendant's potential exposure are fair and reasonable.  *See, e.g., In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir.2000) (holding that class action settlement recovering 16% of potential exposure was fair and reasonable; "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.  Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment"; noting that whether the settlement is fair and adequate depends on the "the difficulties in proving the case"); *Bellinghausen v. Tractor Supply Co.*, 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015) (holding that class action settlement recovering between 8.5% and 25% of the defendant's potential exposure was fair).

Here, as previously briefed in Plaintiff's motion for preliminary approval, Plaintiff estimated the maximum class exposure at $11,135,839.73 before accounting for any of Defendant's defenses or Plaintiff's risk of loss.  The $1,150,000.00 settlement represents approximately 10.33% of the maximum exposure.  However, when taking into account the defenses and risks, the estimated potential liability is reduced to a realistic $7,297,013.33.  Based on this amount, the $1,150,000.00 settlement represents

1  approximately 15.76% of the potential exposure.  These percentages are considered
2  reasonable and consistent with other class action settlement recoveries.  Tulyathan Decl.
3  at ¶ 14.  As addressed in the Court's Preliminary Approval Order (Dkt. No. 80), the
4  settlement falls within the range of reasonableness. *See McKenzie v. Federal Express*
5  *Corp.*, 2012 US Dist Lexis 103666 (C.D. Cal. July 2, 2012); *Brown v. CVS Caremark*,
6  United States District Court, Central District, Case No.: 2:15-cv-07631-JFW-PJW.

7        Moreover, courts have acknowledged that, even if the court has concerns about the
8  class recovery, the lack of objection to the recovery by the class weighs in favor of
9  finding that the settlement amount is fair and reasonable. *See Chun-Hoon*, 716 F. Supp.
10 2d at 851. In *Chun-Hoon*, although the court had concerns about the adequacy of the
11 settlement during preliminary certification, the lack of objection to the settlement aided
12 the court in determining that the settlement was beneficial to the class.  *Id*.  Here, not a
13 single objection was filed.

14       As such, this settlement should be viewed favorably.

15     **D.**    **The Extent of Investigation Favors Settlement**

16       Here, settlement was reached following the exchange of significant data and
17 documents, obtained through both formal and informal discovery.  This included
18 exchange of class data, review of thousands of pages of document production, policy
19 documents, and multiple depositions.  Plaintiff also retained an expert witness in
20 connection with the analysis of class data for purposes of mediation.  Tulyathan Decl. at ¶
21 8. In other words, Plaintiff's counsel conducted significant investigation and analysis to
22 ascertain the value of the class claims.  Furthermore, the negotiations were adversarial
23 and non-collusive at all times, including two separate mediations before experienced
24 third-party neutrals.  Tulyathan Decl. at ¶¶ 10-11.  Courts have held that such discovery
25 is sufficient for parties to make an informed decision regarding the adequacy of the
26 settlement. *See*, *e.g.*, *Dyer*, 2014 WL 5369395, at *3 (parties' participation in written
27 discovery, depositions, witness interviews, and formal mediation favors an informed
28 settlement); *Chun-Hoon*, 716 F. Supp. 2d at 848 ("true value of the class claims is well-

known and class counsel possess a sufficient understanding of the issues involved and the strengths and weaknesses of the case"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (formal discovery not necessary where the parties have sufficient information to make an informed decision about settlement).

### E. The Recommendations of Counsel Favor Approval of the Settlement

The recommendations of experienced counsel should be given considerable weight. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983), *Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980).

Counsel for Plaintiff has broad experience litigating employment class actions. Declaration of Larry W. Lee ("Lee Decl.") at ¶¶ 7-9; Tulyathan Decl. at ¶¶ 20-24; Declaration of William L. Marder ("Marder Decl.") at ¶¶ 3-10. They support this settlement as a fair and reasonable settlement which is in the best interest of the settlement class. Lee Decl. at ¶ 5; Tulyathan Decl. at ¶ 16; Marder Decl. at ¶ 2. Therefore, this factor favors approval of the settlement. *See Dyer*, 2014 WL 5369395, at *3 (recommendation of plaintiffs' counsel supports approval of settlement); *Chun-Hoon*, 716 F. Supp. 2d at 848 (same).

### F. The Class Has Responded Favorably to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that" the settlement is favorable to class members. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008), *see Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) ("The greater the number of objectors, the heavier the burden on the proponents of settlement to prove fairness.").

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Here, not a single objection was filed. Supp. Admin. Decl. at ¶ 7. Further, zero individuals have opted out of this settlement. *Id.* at ¶ 6. In other words, this settlement has a 100% participation rate. *Id.* at ¶ 9. Thus, the lack of any objections and opt-outs strongly support the fairness of the settlement. *See Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (approving settlement with 45 objections and 500 opt-outs from a 90,000-person class, representing .05% and .56% of the class, respectively); *Dyer*, 2014 WL 5369395, at *4 (strong support from class in favor of approving settlement where only three of 8,695 class members opted out); *Chun–Hoon*, 716 F. Supp. 2d at 852 (where 16 of 329 class members opted out, court found that positive class reaction "strongly supports settlement").

### G. The Procedure Through Which the Settlement Was Achieved Supports Final Approval

The Ninth Circuit has recognized that the factors to be examined at final approval may differ depending on the circumstance of each case. *Officers for Justice*, 688 F.2d at 625. As noted above, the Parties participated in an arm's length negotiation, facilitated by two professional mediators with significant class action experience. This weighs in favor of approval of the settlement. *See Chun-Hoon*, 716 F. Supp. 2d at 851 (finding that use of formal arm's length mediation supported approval of settlement agreement).

Further, the Ninth Circuit has shown longstanding support of settlements reached through arm's length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965, citing *Hanlon*, 150 F.3d at 1027. The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral, both of which factors are present here.

The Court in *Rodriguez* found that the settling parties "put a good deal of stock in the product of an arms' length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested." *Rodriguez*, 563

F.3d at 965 (citations omitted).  As the Court explained, "[i]n reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id*. at 965 (citations omitted); *see also Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir.1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *4 Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual for Complex Litigation, Fourth* § 30.42 (Fed. Jud. Ctr., 4th ed. 2004)).

The proposed settlement has no deficiencies.  There is no standard or benchmark for determining whether any given settlement is fair.  "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982) (citation omitted). In making its determination, the Court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements").

The settlement has been reached after considerable investigation, litigation, negotiations, and involving the mediation efforts of two highly experienced mediators. Each side evaluated the strengths and weaknesses of their case and independently came to the conclusion that this settlement represents a responsible means of addressing the claims of Plaintiff and the Class, as well as Defendant's contention that it would prevail on the merits if the case were taken through trial.

## VI. PLAINTIFF REQUESTS APPROVAL OF THE PAGA SETTLEMENT

As set forth in Plaintiff's Motion for Preliminary Approval, the Settlement Agreement includes the settlement of the PAGA claims brought by Plaintiff.  California

Labor Code § 2699(l)(2) provides that the court shall review and approve any settlement of any civil action filed pursuant to PAGA. The California Supreme Court has held that an employee who sues an employer under PAGA need not satisfy class action requirements. *Arias v. Superior Court*, 46 Cal. 4th 969, 974 (2009). For example, "PAGA has no notice requirements for unnamed aggrieved employees, nor may such employees opt out of a PAGA action." *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1122 (9th Cir. Cal. 2014).

Without repeating and reiterating the arguments in favor of approval the settlement of the PAGA claims, Plaintiff incorporates the arguments as previously set forth in his Motion for Preliminary Approval and requests that the settlement of the PAGA claims also be approved concurrent with this Motion. Dkt. No. 76. In sum, the settlement allocates $100,000.00 of the Gross Settlement Amount as PAGA Penalties sought as part of the proposed PAGA settlement. Settlement Agreement §§ 1.20, 1.21, 7. Pursuant to Labor Code § 2699(i), 75% of these penalties are to be paid to the LWDA. Accordingly, the Settlement provides for $75,000.00 to be paid to the State of California from the Gross Settlement Amount. *Id*. The remaining $25,000 will be distributed to all PAGA Employees, which encompasses Class Members who worked for Defendant at any time from April 6, 2019, through Preliminary Approval. *Id*. PAGA Employees will be paid a pro rata portion of the PAGA Penalties, calculated based on the number of pay periods each PAGA Employee performed work for Defendant in California during the PAGA Period, as compared to the total number of pay periods all PAGA Employees performed work for Defendant in California during the PAGA Period. Settlement Agreement § 7.

Although class requirements need not be satisfied, all of the factors weighing in favor of approving settlement of the class claims weigh equally in favor of approval of the PAGA claim. As discussed at length above, the settlement, including settlement of the PAGA claim, is the product of informed negotiations and is fair, reasonable, and adequate to all concerned, and not the product of fraud, collusion, or overreaching.

Accordingly, Plaintiff respectfully requests the Court approve the PAGA

settlement and the release of the Released PAGA Claims.

## VII. CONCLUSION

Based on the foregoing, Plaintiff and Class Counsel respectfully request that the Court grant final approval of this class action settlement and enter an Order:

1. Granting final approval of the proposed settlement;

2. Granting approval of the settlement of the PAGA claims;

3. Order payment from the settlement proceeds to the Settlement Administrator in compliance with the Settlement Agreement;

4. Grant the previously filed Motion for Approval of Attorneys' Fees, Costs, and Class Representative Service Award;

5. Enter the proposed Final Approval Order and Final Judgment submitted herewith; and

6. Retain continuing jurisdiction over the implementation, interpretation, administration, and consummation of the settlement.

DATED: April 5, 2024                DIVERSITY LAW GROUP, P.C.

By: /s/ Kwanporn "Mai" Tulyathan
Larry W. Lee
Kwanporn "Mai" Tulyathan
Attorneys for Plaintiff and the Class

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**